COMMONWEALTH *vs.* F. CLARK SHERMAN.

Worcester.  September 29, 1919. — October 10, 1919.

Present: RUGG, C. J., DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*Evidence*, Admissions and confessions, Relevancy and materiality, Of consciousness of guilt, In rebuttal.  *Practice, Criminal*, Confessions as evidence, Requests and rulings, Exceptions.

At the trial of an indictment charging the burning of a pile of lumber in the night time, evidence tending to show that a sergeant of police had a conversation with the defendant six days after the burning in which the defendant had told the sergeant about seeing and firing at a man near the lumber yard three nights after the fire and finding a "bomb" upon returning after pursuing the man, and that the defendant had admitted, after the police sergeant with him had interviewed certain women who the defendant had said were with him at the time of the incident, that there was no bomb, no man, "just a joke on the women," together with evidence that in the course of the same conversation the defendant admitted setting the fire, is admissible as tending to show that the defendant invented the story of the man and the bomb to direct suspicion from himself to an imaginary person.

After a preliminary hearing, at the trial of the indictment above described, to determine whether an alleged confession by the defendant was voluntary, the judge admitted testimony of the police sergeant that, in the conversation above described, the defendant finally admitted to him that he got some waste from a freight car and placed it on a pile of boards and started the fire.  There was independent evidence that oil-soaked waste was found near the burned lumber and black oil or grease spots were on some of the boards, which might have been caused by oil or grease from the axle box of a car.  The jury were adequately instructed to reject the evidence of the confession if they were satisfied that it was made under the influence of some threat or promise.  The defendant testified that his statement was voluntary and that what the sergeant said to him had no effect on him.  *Held*, that no error was shown as to the admission of the evidence as to the confession.

The indictment above described contained another count charging a crime of the same character on a larger scale five months earlier.  The sergeant of police was asked whether he "had any conversations with the defendant with reference to

the big fire." It appearing that such conversation followed a statement by the sergeant to the defendant, "Tell the truth; it is better for you," the conversation was excluded. Later a verdict of "not guilty" was ordered on that count and the jury were instructed fully not to consider any evidence relating to it. *Held,* that no error was shown relating to this question asked of the police sergeant.

At the same trial, a police captain, to whom the sergeant took the defendant, was permitted to testify that, after the sergeant had stated what the defendant had told him, the defendant stated, "I am not going to talk before a crowd; I am not going to say anything that can be used against me; this means twenty years to me." A city physician, who examined the defendant the day after his arrest, also was allowed to testify that the defendant said to him, "Supposing I told you I took some waste and threw it under a pile of lumber in the . . . yard and then went home, and fifteen or twenty minutes later an alarm was turned in that there was a fire in the yard, could you prove that I had set the fire?" *Held,* that the evidence was admissible as tending to show consciousness of guilt.

The admission in rebuttal at the trial above described of testimony of police officers, relating conversations with the defendant in which he told of shots fired around the lumber yard and described the bomb of which he later told the police sergeant as above stated, while the testimony should have been offered in chief, was *held* not to have harmed the defendant.

A judge presiding at the trial of an indictment need not grant a request for an instruction to the jury which emphasized facts selected from the testimony for comment.

INDICTMENT, found and returned on August 21, 1918, charging the defendant in a first count with burning the office and lumber sheds of the W. H. Sawyer Lumber Company in Worcester on February 21, 1918, in the night time, and in a second count with burning a pile of lumber of the same company on July 20, 1918, in the night time.

There was a trial before *O'Connell,* J. The conversation between the defendant and Sergeant Kelleher, described in the first numbered paragraph of the opinion, occurred on July 26, 1918. The defendant was placed under arrest on that day.

The Dr. Peterson, referred to in the fourth numbered paragraph of the opinion, was Dr. Hugo Peterson, city physician, who at the request of Captain of Police Johnson had examined the defendant in the police headquarters on the day following his arrest.

The testimony of officers Finneran and Healy and of Captain Dillon, referred to in the sixth numbered paragraph of the opinion, was as follows:

"John F. Finneran, a police officer of the city of Worcester, called in rebuttal, testified that his 'beat' covered the Wood property, and against the objection of the defendant and subject to his

exception was permitted to testify that on a night when he was in the office of the Wood Lumber Company Sherman fired two shots, and that after firing them had a talk with him. Sherman said that there was a man around in the early evening, dressed in a long coat and soft hat and carrying a rifle; that when he was in the office he heard the man in the runway and took two shots at him; that after firing the shots he said to Finneran that the man was outside of the door in the driveway; that they went out immediately; that Finneran told Sherman that he was satisfied there was no man there; that Sherman said it was a bluff.

"James Healy, a police officer of the city of Worcester, called in rebuttal, testified that his 'beat' included the Wood property, and against the objection of the defendant and subject to his exception also testified that four days after the July 20, 1918, fire he talked with the defendant about a bomb and also testified that Sherman said that the bomb was about six inches square, bound round with heavy wire, that the figures and letters 2-3-x-h-l were on it; that he threw it in the canal; that on the following day Sherman went down into the canal, when he was present, searched about half an hour and brought up a bottle that looked as though it had contained shoe dressing and a cork about the size of a quarter of a dollar, and that Sherman said that was the only thing that looked like it; that the rest of it had been washed away.

"Captain Dillon was called in rebuttal and against the objection of the defendant, and subject to his exception, was permitted to testify that no one said anything to him at Police Station 4 about a bomb at the time the defendant was there, and that he did not tell this defendant at any time that it was better for him to tell the truth or anything like that in substance."

At the close of the evidence, the defendant asked that the following instructions be given to the jury:

"3. That insomuch as Sergeant Kelleher has admitted lying to the defendant, his evidence should be carefully scanned and in and of itself is insufficient to sustain a conviction.

"4. That if the alleged confession of the defendant was obtained by the sergeant as a result of wilful misrepresentations, it is to be rejected and the verdict should be 'Not Guilty.'

"5. That if the alleged confession or admission of the defendant was obtained by Sergeant Kelleher through fraud, misrepresenta-

tion, or as a result of lies, it is to be disregarded, and if this is the only evidence connecting the defendant with the burning, then the verdict should be 'Not guilty.' "

"8. That the testimony of Dr. Hugo Peterson, so far as it relates to any statements made by the defendant, is to be rejected and disregarded in arriving at your verdict.

"9. That all the evidence as testified to by Captain Dillon and Dr. Hugo Peterson, so far as it relates to conversations held with the defendant, be struck out and the jury instructed to disregard it.

"10. That all the evidence relating to a bomb, and as to what a man did on a bridge and after the fire be struck out and the jury instructed to disregard it."

The requests were denied. The jury found the defendant guilty; and the defendant excepted.

*D. F. O'Connell, J. H. Meagher & E. Zaeder,* for the defendant, submitted a brief.

*E. T. Esty,* District Attorney, for the Commonwealth.

DE COURCY, J. The indictment on which the defendant was tried contained two counts, the first count alleging a burning in the night time of February 21, 1918, of the office and lumber sheds of the W. H. Sawyer Lumber Company, in Worcester, and the second alleging a burning in the night time of July 20, 1918, of a pile of lumber of the same company. At the close of the Commonwealth's case the judge directed a verdict of not guilty on the first count. The jury found the defendant guilty on the second count. There were numerous exceptions to the admission of evidence, and to the refusal of the judge to charge the jury as requested.

1. The defendant was arrested by Sergeant of Police Kelleher. On the morning of his arrest, there was a conversation between them, culminating in the defendant's confession. Kelleher testified that the defendant told him about seeing and firing at a man on the railroad track adjoining the lumber yard three nights after the fire, and finding a "bomb" on his return from a pursuit of this man; and that the defendant admitted, after they had interviewed certain women who the defendant had said were with him at the time of this incident, that there was no bomb, no man, "just a joke on the women." This was admissible as part of the

same conversation in which the defendant finally admitted setting the fire. In itself it tended to show that the defendant invented this story in order to direct suspicion from himself to this imaginary person.

2. The defendant's confession, that he "got some waste from a freight car ånd placed it on a pile of boards and started the fire" was properly admitted. In accordance with the settled practice in this Commonwealth, the judge in the absence of the jury held a preliminary hearing to determine whether the confession was voluntary; and, having admitted it in evidence, he adequately instructed the jury in his charge to reject the alleged confession if they were satisfied that it was made under the influence of some threat or promise, and so was not voluntary. *Commonwealth* v. *Hudson,* 185 Mass. 402. *Commonwealth* v. *Russ,* 232 Mass. 58, 69. The defendant himself testified, upon cross-examination, that his statement was voluntary; and to the question (properly asked) "Did anything that the sergeant said to you have any effect whatever on you?" answered, "Not a bit." There was independent evidence that oil-soaked waste was found near the burned lumber, and black oil or grease spots on some of the boards, which might have been caused by the oil or grease from the axle box of a car. As was said by Shaw, C. J., in *Commonwealth* v. *Morey,* 1 Gray, 461: "The ground on which confessions made by a party accused, under promises of favor, or threats of injury, are excluded as incompetent, is, not because any wrong is done to the accused, in using them, but because he may be induced, by the pressure of hope or fear, to admit facts unfavorable to him, without regard to their truth, in order to obtain the promised relief, or avoid the threatened danger, and therefore admissions so obtained have no just and legitimate tendency to prove the facts admitted."

3. There was no error in asking Sergeant Kelleher "whether [he] . . . had any conversations with the defendant with reference to the big fire," meaning the fire of February 21. It appearing that the sergeant then said to the defendant "Tell the truth; it is better for you," the judge excluded the conversation. Later, the judge directed a verdict of "Not Guilty" on the first count, relating to the fire of February 21; and fully instructed the jury not to consider any evidence relating to it.

4. The judge rightly admitted the testimony of Captain Dillon,

that, after Sergeant Kelleher stated what the defendant had said to him about the July fire, Sherman replied to it: "I am not going to talk before a crowd; I am not going to say anything that can be used against me; this means twenty years to me." Also the testimony of Dr. Peterson, that Sherman said to him: "Supposing I told you I took some waste and threw it under a pile of lumber in the Sawyer yard and then went home, and fifteen or twenty minutes later an alarm was turned in that there was a fire in the yard, could you prove that I had set the fire?" The jury well might find that these statements tended to show consciousness of guilt; and no valid ground for their exclusion has been shown. *Commonwealth* v. *Piper*, 120 Mass. 185, 189. *Commonwealth* v. *Trefethen*, 157 Mass. 180, 197, 198. *Commonwealth* v. *Spiropoulos*, 208 Mass. 71. *Commonwealth* v. *Myers*, 160 Mass. 530.

5. Many exceptions were taken to questions which the district attorney was allowed to ask the defendant on cross-examination, most of them relating to matters inquired of in direct examination. We have examined all of them, and deem it sufficient to say that the judge rightly allowed them in his discretion as bearing on the defendant's credibility.

6. The testimony of Captain Dillon in rebuttal was rightly admitted to contradict the testimony of the defendant. The testimony of officer Healy and that of officer Finneran, assuming it all to be material, apparently should have been offered as part of the Commonwealth's case in chief rather than in rebuttal. We are not satisfied, however, that any harmful error has been shown.

7. There was no error in failing to give the instructions requested. With one exception they emphasized selected facts for comment by the judge. *Altavilla* v. *Old Colony Street Railway*, 222 Mass. 322. The judge aptly and accurately defined the law with reference to confessions, and explained the probative force of the collateral evidence, offered to show consciousness of guilt. The legal rights of the defendant were fully and fairly safeguarded in a charge to which no exception was taken.

*Exceptions overruled.*