COMMONWEALTH *vs.* DONATO VELLECO.

Suffolk.   May 12, 1930. — June 30, 1930.

Present: RUGG, C.J., CROSBY, CARROLL, PIERCE, & SANDERSON, JJ.

*Homicide. Evidence,* Competency, Res gestae, Of intent, Relevancy and materiality, In rebuttal. *Witness,* Credibility. *Practice, Criminal,* Conduct of trial: remarks by judge, argument by district attorney, requests, rulings and instructions; Ordering verdict; Exceptions; Common Law Rule 44 of the Superior Court (1923). *Rules of Court.*

At the trial of an indictment for manslaughter, there was evidence that five men, including the defendant, met on a street; that two of them exchanged blows and a fight occurred; that the defendant "was there with an open knife in his hand, wielding same"; that two men were stabbed, one of them dying subsequently; that his death was due to a wound of a nature consistent with the use of a knife identified as belonging to the defendant; and that the defendant, after being arrested, said that the fight started and that he "took out his penknife and began to strike out with it, but that he did not know whom, if anybody, he struck." A witness testified that he was attracted to the scene of the fight by a scream; that he saw one of the men who was stabbed falling to the pavement, the defendant standing over him with a knife; that the defendant then chased the witness with a knife in his hand; that the defendant then stabbed the man who died and "who was out in the street doing nothing and taking no part in the row"; that the defendant then chased a third man, who was not one of the five men, and threw the knife at him; and that the defendant then picked up the knife and walked away. *Held,* that

(1) The admission of testimony by another witness, that he saw the defendant "make an aim" at the third man and chase him up the street, was not erroneous in that such testimony related to an independent offence: on the evidence, the stabbing of the man who died and the chasing of the third man were part of the same event, and such testimony was competent to show the intent and purpose of the defendant in a series of acts which resulted in the death of the deceased man;

(2) Testimony by the defendant as to the ages of four children, of whom he testified he was the father, was immaterial and properly was excluded;

(3) The Commonwealth was not required to prove that the defendant intended to commit the crime of manslaughter;

(4) The evidence warranted a verdict of guilty.

A witness for the defendant testified that he did not interfere in the fight, that he was not going to the police station and "butt in on other people's business." To a remark by the district attorney, the

witness said, "If you were in my place what would you do?" The trial judge then said, "Notify the police . . . . That is what you should do as a citizen"; that in certain circumstances it was the duty of every good citizen in the community to try and notify the police. The defendant excepted to the judge's remarks. *Held*, that

(1) Those remarks did not violate G. L. c. 278, § 2, since they involved no finding of fact;

(2) The remarks did not affect the credibility of the witness;

(3) There was no violation of G. L. c. 278, § 11;

(4) No prejudice to the defendant appeared and the exception must be overruled.

The defendant testified at the trial above described that, after the fight started, a crowd gathered and he was struck from behind with some hard object and he fell; "that he then took out his penknife, opened it, and held it up and swung it in front of him as he rested on his knees on the ground, to protect himself; that the crowd then scattered; that he did not throw his knife at anybody and did not know or believe that he had struck anybody with his knife as he lay on his knees . . ." A witness, called by the Commonwealth in rebuttal, testified, subject to the defendant's exception, that, when he talked with the defendant after his arrest, he asked the defendant, "Why did you draw the knife?" and that the defendant replied that one of the men "punched me in the stomach and reached for my chain." *Held*, that the exception must be overruled, since the testimony excepted to was admissible in rebuttal to contradict the defendant and to impeach his credibility.

The defendant in the indictment above described was an Italian. The district attorney, in his closing argument to the jury, made reference to certain witnesses called by the defendant as "Italian witnesses" and "professional witnesses." The defendant excepted. The record before this court contained nothing to show in what connection the reference to "professional witnesses" was made. *Held*, that

(1) The reference to "Italian witnesses" properly could be made for the purpose of description, and to distinguish them from witnesses of other nationalities;

(2) Nothing appeared to show that the reference to "professional witnesses" was improper or prejudicial to the defendant;

(3) The exception must be overruled.

Under Common Law Rule 44 of the Superior Court (1923), the question, whether the jury should be instructed to render a verdict of not guilty at the trial of an indictment, cannot be raised by a request for a ruling to that effect, but only by a motion.

INDICTMENT charging manslaughter, found and returned on November 10, 1924.

The action was tried in the Superior Court before *Dubuque*, J. Material evidence, the course of the trial and rulings requested by the defendant and refused by the judge are

described in the opinion. The defendant was found guilty and alleged exceptions, which, after the death of *Dubuque*, J., were allowed by *Williams*, J.

*J. P. Walsh*, for the defendant.

*J. J. Murphy*, Assistant District Attorney, for the Commonwealth.

CROSBY, J. The defendant was indicted and convicted of the crime of manslaughter in causing the death of one Alfred Battaglia. At the same trial the defendant was tried upon another indictment charging him with an assault and battery, being armed with a dangerous weapon, upon one Edward Connolly.

On the night of October 12, 1924, Battaglia, Connolly, one Hurley, the defendant, and one Peneco, a friend of the defendant, met near the corner of George and Magazine streets, in the Roxbury district of Boston, and a fight occurred. There was evidence that Hurley and Peneco exchanged blows; that shortly thereafter Connolly and Battaglia were stabbed; and that the defendant "was there with an open knife in his hand, wielding same."

One Bradley testified that on the night in question he was near the place of the disturbance; that he heard a scream, went over to the corner of the streets, and saw Connolly falling to the pavement and the defendant standing over him with a knife; that the defendant then came running toward him with the knife in his hand and chased him; that in the meantime Connolly got up and ran; that then the defendant stabbed Battaglia "who was out in the street doing nothing and taking no part in the row, and that after stabbing Battaglia, Velleco [the defendant] chased one James Kates, and threw the knife at Kates, the knife hitting a fence, and that Velleco then picked up the knife, put it in his pocket, and walked away."

A police inspector testified that the defendant after his arrest told him that Peneco and Hurley got into a fight and that he "took out his penknife and began to strike out with it, but that he did not know whom, if anybody, he struck." This witness also testified that the defendant recognized as his the knife, which was admitted in evidence as belonging to him.

The defendant testified in part as follows: He was going along the street with Peneco taking the latter home; there was a fight between Hurley and Peneco, which he tried to prevent; a crowd gathered and he was struck from behind with some hard object and he fell; "that he then took out his penknife, opened it, and held it up and swung it in front of him as he rested on his knees on the ground, to protect himself; that the crowd then scattered; that he did not throw his knife at anybody and did not know or believe that he had struck anybody with his knife as he lay on his knees . . ."

The medical examiner testified that an autopsy was performed on the body of the deceased and showed a wound a little more than half an inch long, in the abdomen, which perforated the large intestine as well as the ileac artery and vein, and that the deceased died from bleeding as a result of such wound; that the wound was consistent with the use of the knife identified as the defendant's. There was other evidence offered by the Commonwealth, and by the defendant, which it is unnecessary to recite except as it was admitted or excluded subject to the defendant's exception and will be hereafter referred to.

Esther Lozier, a witness called by the Commonwealth, testified that she lived near the scene of the disturbance; that she heard a noise and looking up the street saw Peneco on the ground, and then saw the defendant chase Kates up the street, but did not see the defendant strike anyone. Subject to the defendant's exception, this witness was permitted to testify in substance that Kates was walking along the street and that the defendant came over and met him and "made an aim" at him, and that Kates ran and the defendant chased him up the street; that the defendant then came back and the witness saw the defendant had something in his hand which he was putting in his back pocket. A pencil sketch of the vicinity drawn by the district attorney was shown to the witness, showing the location of the various persons and places respecting which she testified. It is the contention of the defendant that evidence that Kates was chased by the defendant was inadmissible as it

tended to prove an independent crime. This exception cannot be sustained; the evidence tended to show that the stabbing of the deceased, and the chasing of Kates, were a part of the same transaction, and was properly admitted to show the intent and purpose of the defendant in a series of acts which resulted in the death of Battaglia. *Commonwealth* v. *Dow*, 217 Mass. 473, 480. *Commonwealth* v. *Riches*, 219 Mass. 433, 439. *Commonwealth* v. *Feci*, 235 Mass. 562, 567. *Commonwealth* v. *Corcoran*, 252 Mass. 465, 478. *Commonwealth* v. *Piccerillo*, 256 Mass. 487, 489, 490.

The defendant, after testifying that he was the father of four children, was asked by his counsel the ages of the children. There was no error in the exclusion of the question. It does not appear that the answer would be material upon any issues involved at the trial.

One D'Argenio, a witness called by the defendant, after testifying to an obscene and vulgar statement made by someone at the time of the fight, which he knew was intended against some Italians, testified that he did not interfere; that there are plenty of things that the Boston police do not take care of; that he was not going to any station house and "butt in on other people's business." He was then asked by the district attorney: "Even if you saw a Guinea or an Italian . . . . Even if you saw an Italian." The witness replied, "If you were in my place what would you do?" The trial judge then said, "Notify the police . . . . That is what you should do as a citizen"; that in certain circumstances it was the duty of every good citizen in the community to try and notify the police. The defendant excepted to these remarks of the judge. We are of opinion that no rights of the defendant were prejudiced by what the judge had said to the witness. The statements to the witness involved no finding of fact required to be found by the jury under G. L. c. 278, § 2, nor did they tend to affect the credibility of the witness, as the defendant argues. The provisions of G. L. c. 278, § 11, were in no way violated by the colloquy between the judge and the witness, and the defendant was not harmed by it. This exception cannot properly be sustained. See *Whitney* v. *Wellesley &*

*Boston Street Railway,* 197 Mass. 495; *Commonwealth* v. *Anderson,* 245 Mass. 177, 185.

Inspector Dennessey, called in rebuttal, testified, subject to the defendant's exception, that when he talked with the defendant after his arrest he asked the defendant, "'Why did you draw the knife?' He says, 'Hurley punched me in the stomach and reached for my chain.'" The defendant having testified that he was struck from behind with some hard object causing him to fall, and that he then took out his knife and swung it in front of him, the testimony was admissible in rebuttal in contradiction of the defendant's testimony and as bearing upon his credibility. *Robinson* v. *Old Colony Street Railway,* 189 Mass. 594, 596. *Commonwealth* v. *Sherman,* 234 Mass. 7. *Commonwealth* v. *Williams,* 244 Mass. 515, 521.

The reference by the district attorney, in his closing argument, to witnesses called by the defendant as "Italian witnesses" and as "professional witnesses" discloses no error of law. The reference to Italian witnesses could be properly made for the purpose of description, and to distinguish them from witnesses of other nationalities. There is nothing in the record to show in what connection the reference to "professional witnesses" was made, or that such designation was improper or prejudicial to the rights of the defendant. The exceptions to the use of these terms by the district attorney cannot be sustained.

The defendant's first request for a directed verdict could not properly have been granted. Whether a verdict should be ordered can be raised only by a motion. Common Law Rule 44 of the Superior Court (1923). *Patton* v. *DeViney,* 259 Mass. 100, 102. *Bray* v. *Hickman,* 263 Mass. 409, 416. Considered on its merits it was denied rightly.

The Commonwealth was not required to prove that the defendant intended to commit the crime of manslaughter. *Commonwealth* v. *Hawkins,* 157 Mass. 551. *Commonwealth* v. *Parsons,* 195 Mass. 560, 569. *Commonwealth* v. *Peach,* 239 Mass. 575, 579. It follows that the defendant's sixth request was rightly denied. The other requests need not be referred to in detail; a careful consideration of them makes

it plain that they could not properly have been granted. The instructions to the jury fully and accurately covered the issues involved in the trial.

*Exceptions overruled.*