COMMONWEALTH *vs.* HARRY R. COSHNEAR & others.

Middlesex.    December 3, 1934. — February 25, 1935.

Present: RUGG, C.J., CROSBY, FIELD, DONAHUE, & LUMMUS, JJ.

*Conspiracy. Larceny. False Pretences. Pleading, Criminal,* Indictment, Plea. *Practice, Criminal,* Requests, rulings and instructions, Exceptions, Ordering verdict. *Jurisdiction. District Attorney. District Court,* Special judge. *Evidence,* Competency; Opinion: expert; Relevancy and materiality. *Witness,* Redirect examination, Expert, Hostile witness, Cross-examination.

Where two indictments against the same defendant were tried together and the defendant was found guilty under each and alleged exceptions saved at the trial, and after the verdicts one of the indictments was placed on file, questions of law respecting that indictment were not before this court on the exceptions and need not be considered.

A defendant, by pleading generally to an indictment against him, admits its validity as to matters not affecting the jurisdiction of the court over the crime or over him.

The fact, that an assistant district attorney, who had presented the evidence to the grand jury which returned an indictment and who was acting in behalf of the Commonwealth at the trial thereof, was a special judge of a district court by appointment prior to his appointment as assistant district attorney, did not affect the jurisdiction

of the trial court over the crime or over the defendant; and therefore that fact was not sufficient ground for quashing the indictment and discharging the defendant on motion made by him after he had pleaded not guilty to the indictment and a jury had been empanelled.

The status of a person acting as assistant district attorney in the presentation of evidence to a grand jury and at the trial of an indictment found and returned thereby could not be attacked by any proceeding to which he was not a party; and therefore could not be attacked by way of a motion to quash the indictment and discharge the defendant on the ground that such person also was a special judge of a district court by appointment prior to his appointment as assistant district attorney.

Requests for rulings, presented by the defendant at the close of the evidence at the trial of an indictment, to the effect that the assistant district attorney who acted for the Commonwealth at the trial was disqualified so to act and that therefore the prosecution of the indictment was in contravention of certain constitutional and statutory provisions and the defendant must be found not guilty, were presented too late, were not pertinent to the issues on trial, and were refused rightly.

An indictment, charging that the defendants with others "did conspire together to commit thereafter from time to time and on different occasions as opportunity therefor should offer . . . the crime of stealing the property of persons unknown" to the conspirators at the time of such conspiracy, together with a bill of particulars, filed by the Commonwealth, to the effect that the conspiracy was to steal from members of the general public by the sale of stock of a certain trust company by direct and indirect misrepresentations of material facts as to the market value of the stock, and that there was failure to disclose the material fact that the resale of such stock was subject to a certain restriction, set out a crime.

While a statement that a certain corporate stock is worth a specified price per share is dealer's talk and amounts only to an expression of opinion, a representation that the stock is selling for a certain price per share, or that its value in the financial market is a specified price, is a representation of a material and substantive fact.

A verdict of guilty was warranted at the trial of the indictment for conspiracy above described on evidence showing in substance that the stock of the trust company was unlisted, was not sold on the stock exchange and was of a value not readily ascertainable by the public; that the defendants acted in concert with the other alleged conspirators in representing to the public by various means that the stock was selling in the open market at about $125 per share; that the representation was not true; that the defendants, who were cognizant of the sales of the stock which determined its value, knew or should have known that the representation was not true; and that the defendants and others engaged in purchasing the stock at prices much less than $100 per share and in selling it at about $125 per share.

The record of the trial of the indictment for conspiracy above described disclosed no reversible error in the admission or exclusion of evidence.

At the trial of an indictment against several persons for conspiracy, it is proper to permit the jury, provided they find the conspiracy proved, to consider as against each and all of the conspirators the acts and declarations by one of them in pursuance of the common object while the conspiracy is pending.

The assistant director of the trust company division of the State banking department properly might be found competent to testify as an expert concerning the book value of the stock of a certain trust company.

The fact that an expert witness might have gained from inadmissible sources his knowledge of the matter to which his testimony related did not render his testimony incompetent.

Where the judge presiding at the trial of an indictment finds that a witness called by the Commonwealth is hostile to it, he in his discretion may permit the district attorney to cross-examine the witness.

The scope of cross-examination at the trial of an indictment rests largely in the discretion of the trial judge.

The question, whether a verdict of not guilty should be ordered at the trial of an indictment, should be raised by motion, not by request for ruling.

INDICTMENT, found and returned on December 9, 1931, charging a conspiracy to steal.

The indictment and bills of particulars are described in the opinion. The indictment was tried in the Superior Court before *T. J. Hammond,* J.

The evidence "touching the conduct of Sternberg," referred to in the opinion, was a part of the testimony of one Bartholomew Nagle, a blind man, and in substance was that in May, 1930, a man by the name of Sternberg came to see him with reference to the sale of Medford Trust Company stock; that Sternberg tried to sell him some of the Medford Trust Company stock and told him that "it would be the best thing the witness had ever done"; that the witness gave Sternberg his bank book; and that Sternberg took it to the bank and on three occasions drew out money, amounting in all to $2,500. Two orders, Nagle to Medford Trust Company, totalling $2,500, were admitted in evidence as against the defendant Harry R. Coshnear only, subject to the rule in conspiracy cases. Checks dated May 19, 1930, and May 24, 1930, on the Federal National Bank, payable to Wardwell and Company and Bartholomew Nagle, respectively, signed by Medford Trust Company, Savings Department, were admitted in evidence.

There was other evidence that Wardwell and Company was a trade name under which the defendant Harry R. Coshnear did business.

The testimony of a purchaser who offered his stock to the Medford Trust Company in March, 1931, referred to in the opinion, was in substance that early in 1930, in reliance upon statements in a circular issued by Norton's Financial News, Inc., he had purchased twenty-five shares of stock of the trust company, not knowing that there was a restriction on the transfer of the stock; that, later learning of that restriction, he had attempted unsuccessfully to sell the stock at auction; and that later he offered to sell his stock to the trust company, and his offer was accepted. Subject to an exception by the defendants, he was permitted to be asked, "You offered it at the book value of the stock then, in accordance with the restriction?" and answered, "Yes."

Other material evidence and exceptions saved by the defendants are described in the opinion.

At the close of the evidence, the defendants Coshnear moved that verdicts of not guilty be ordered in their favor. The motions were denied. Each also asked for rulings on all the evidence, and for the following rulings:

"49. The prosecution of the defendant by the Commonwealth at this trial is in contravention of the Fourteenth Amendment to the Constitution of the United States and of art. 30 of the Declaration of Rights of the Constitution of the Commonwealth, in that in violation of said art. 30 . . . and of G. L. c. 12, § 27, the appearance for the Commonwealth in this case is by a person disqualified to act as district attorney by virtue of his tenure of the office of associate justice of the Second District Court of Eastern Middlesex.

"50. You may not return a verdict of guilty against the defendant because his prosecution contravenes the due process of law required by the Fourteenth Amendment to the Constitution of the United States in that the prosecution of the case at bar is and has been conducted by a person disqualified by virtue of his tenure of the office of

associate justice of the Second District Court of Eastern Middlesex.

"51. The Commonwealth is precluded by the Fourteenth Amendment to the Constitution of the United States from permitting any prosecution of this defendant except as provided by G. L. c. 12, § 27, and I rule and instruct you as matter of law that this prosecution has not been so conducted and therefore you cannot return a verdict of guilty against the defendant."

The rulings were refused.

The defendants Coshnear and the defendant Mabey were found guilty and alleged exceptions. Mabey waived his exceptions before argument in this court.

*E. M. Dangel,* (*L. E. Sherry & E. F. Connelly* with him,) for the defendants.

*F. A. Crafts,* Assistant District Attorney, for the Commonwealth.

RUGG, C.J. These exceptions are prosecuted by the defendants Harry R. Coshnear and Samuel Coshnear. They will be referred to as the defendants. The third excepting defendant, one Mabey, waived his rights under the exceptions. The case against him need not be considered.

The defendants with others were charged in one indictment with having conspired together to commit the crime of defrauding persons, members of the general public, unknown to the defendants at the time of such conspiracy. Three days after a verdict of guilty was rendered against the defendants and Mabey, that indictment was placed on file as to them. Questions of law respecting that indictment are not before us and need not be considered. *Commonwealth* v. *Carver,* 224 Mass. 42, 44.

It was charged in the second indictment (hereafter spoken of as the indictment) that the defendants with others, between December 1, 1929, and December 7, 1931, "did conspire together to commit thereafter from time to time and on different occasions as opportunity therefor should offer . . . the crime of stealing the property of persons unknown" to the defendants at the time of such

conspiracy. After verdicts of guilty, the defendants were sentenced and execution of sentences was stayed.

After the defendants had pleaded not guilty and the jury had been empanelled, and after the opening in behalf of the Commonwealth, each defendant presented a motion praying that the indictment be quashed and the defendant discharged on the ground that the assistant district attorney who had presented the evidence to the grand jury which returned the indictment, and who was acting in behalf of the Commonwealth in the trial of the case to the petit jury, was a special justice of a district court by appointment prior to his appointment as assistant district attorney and was therefore disqualified to act. The main argument by the defendants on this point is that the holding of these two offices by one person is incompatible with art. 30 of the Declaration of Rights and c. 6, art. 2 of the Constitution of the Commonwealth, with art. 8 of the Amendments to the Constitution, and with G. L. (Ter. Ed.) c. 12, § 27. The matters set up in the motions did not affect the jurisdiction of the court over the crime or over the defendants. Therefore, a plea to the indictment admits its genuineness. *Lebowitch, petitioner,* 235 Mass. 357, 362–363. *Commonwealth* v. *Lombardo,* 271 Mass. 41, 44. The status of the person acting as assistant district attorney could not be assailed or tried by any proceeding to which he was not a party. *Sheehan's Case,* 122 Mass. 445. *Commonwealth* v. *Taber,* 123 Mass. 253. There was no error in the denial of the motions.

At the close of the evidence the defendants attempted to raise substantially the same question by requests for rulings to the effect that the assistant district attorney was disqualified from conducting the trial and hence a verdict of not guilty must be returned. These requests at the end of the trial came too late. Without intimating any decision on the point whether in a constitutional sense one person can hold the two offices, it is enough to say that there "are few constitutional rights that may not be waived." *Eliason* v. *Wilborn,* 281 U. S. 457, 460. The re-

quests were not pertinent to the issues on trial and were denied rightly. *Sheehan's Case,* 122 Mass. 445.

Bills of particulars to the indictment were filed to the effect that the conspiracy was to steal from members of the general public by the sale of Medford Trust Company stock by direct and indirect misrepresentations of material facts as to the market value of the stock and that there was failure to disclose the material fact that there was a restriction on the resale of such stock. Such restriction was that the stock must first be offered to the directors at its book value.

The indictment as thus narrowed by the bills of particulars set out a crime. G. L. (Ter. Ed.) c. 266, § 30. *Commonwealth* v. *King,* 202 Mass. 379, 388. A statement that stock is worth a specified price per share is dealers' talk, amounts only to an expression of opinion, and is not a crime. *Deming* v. *Darling,* 148 Mass. 504. *Lynch* v. *Murphy,* 171 Mass. 307. *Commonwealth* v. *Quinn,* 222 Mass. 504, 512–513. *Gaucher* v. *Solomon,* 279 Mass. 296. A representation that stock is selling for a certain price per share, or that its value in the financial market is a specified price, is a representation of a material and substantive fact. If other necessary elements are present, it may be the basis of a crime. *Commonwealth* v. *Wood,* 142 Mass. 459, 461. As was said in *Standard Oil Co. of New York* v. *Back Bay Hotels Garage, Inc.* 285 Mass. 129: "Though value rests upon opinion, it is a fact, and one constantly found by juries. The fact of value may be stated falsely. A false statement of value has been the foundation for a conviction of perjury. *Commonwealth* v. *Butland,* 119 Mass. 317. It has likewise supported an action for deceit. *Andrews* v. *Jackson,* 168 Mass. 266. *Butler* v. *Martin,* 247 Mass. 169. *Reinherz* v. *American Piano Co.* 254 Mass. 411, 420, 421. The cases in which a false representation as to value has been held nonactionable go on the ground that where the defendant has stated merely his own opinion rather than the opinion of the market which determines value, the plaintiff ought not to rely upon the representation."

The outline of the evidence and the contentions of the

Commonwealth founded thereon were summarized in a portion of the charge, to which no exception was taken. That may be conveniently used in substance as a statement of the case. The defendant Mabey began to accumulate stock in the Medford Trust Company. The exact amounts, very considerable in the aggregate number of shares, were not in dispute. In January, 1930, one Merchant, having come into relations with Mabey in consequence of a suggestion from one of the defendants, proceeded to purchase stock in the Medford Trust Company for Mabey. The latter was already a stockholder in the Medford Trust Company and was, or had been, connected with Norton's Financial News and with the General Management Corporation. Broadcasts were made over the radio to the effect that the name of a particularly desirable stock was about to be released and that information could be had concerning it from Norton's Financial News or from Higgins, who was connected with it. Circulars to the same effect were distributed. Persons who acted on the suggestions thus made were directed to certain brokers, among whom were the defendants or the concerns with whom they were connected. Those persons also received further circulars or were seen by agents. The circulars contained true statements as to the history of the Medford Trust Company respecting its dividends. Some of these circulars also contained statements relative to the market value of the stock that went beyond a matter of opinion and amounted to a representation as to a fact then existing that "the stock was selling at a fair market price in the open market in the vicinity of" $125 per share. Some circulars gave one price and some another, but it was substantially the same. That was a statement which any of the individuals responsible for those circulars knew or should have known was not warranted and was not a true portrayal of the situation as to the market value or the fair market value of the stock as it was then being sold. There was further evidence tending to show that purchases of the stock were made by the defendants and others associated with them at less, in many instances much less, than $100 per share, and that

the sales by them were at about $125 per share. The instruction with reference to this aspect of the case was in substance that no one particular fact standing by itself constituted proof beyond a reasonable doubt of the offence charged, but that the contention of the Commonwealth was that a consideration of all the circulars, the several sources from which they were distributed, the circumstances as to their type and character, the way and manner in which information was disseminated, the statements as to price, the conduct of the different parties, the manipulations of the stock before its ultimate sale, the records as to the transactions of one of the brokers, testimony as to transactions of the others and the connection of the defendants with the transactions and with the brokers, would warrant the inference that the parties were all acting together with one common purpose toward a definite end and coöperated and joined in a misrepresentation as to a fact then in existence, viz., market value of the stock, which they knew or should have known was not true.

The defendants' contention that there was no evidence to support a finding of false statements on their part cannot be supported. It is not necessary to traverse the somewhat extended record to demonstrate this in detail. The case against the defendants was established by the testimony of numerous witnesses, each covering but a comparatively small part of the entire field yet sufficient as a whole to support the verdict. One circumstance of significance was that the stock in question was unlisted and not sold on the stock exchange. Its market value was not readily ascertainable by members of the public, but depended in large part upon actual sales with which the defendants and their associates were cognizant. The evidence already summarized was sufficient to support a finding that false statements as to the market value of the stock were made within the rule stated and applied in *Commonwealth* v. *Wood,* 142 Mass. 459, and in *Standard Oil Co. of New York* v. *Back Bay Hotels Garage, Inc.* 285 Mass. 129, to which reference has already been made. The bounds of immunity from liability for false representations as to material facts are

not to be extended. *Mabardy* v. *McHugh,* 202 Mass. 148, 149.

There was sufficient evidence, also, of the conspiracy. Here again the sources of proof were numerous and circumstantial. There were many distinct facts which rightly might have been found to be parts of the same scheme of fraud and to have been participated in by the defendants and their associates. The evidence need not be narrated. Full and accurate instructions were given concerning the elements essential to a conspiracy, to which no exceptions were taken. *Commonwealth* v. *Dyer,* 243 Mass. 472, 483, 484, 485. *Attorney General* v. *Tufts,* 239 Mass. 458, 493–494. *Morrison* v. *California,* 291 U. S. 82, 92–93.

There was sufficient evidence to connect the defendants with the scheme. Harry R. Coshnear at first was associated in business with one Merchant, who was active with Medford Trust Company stock in the early part of 1930. This defendant afterwards advised Merchant that his books be destroyed. In March, 1930, he began conducting business on his own account under the name of Wardwell and Company, mainly for the sale of Medford Trust Company stock. Representations as to its value were contained in circulars sent out under that firm name. The defendant Samuel Coshnear, employed by another broker, was designated by Mabey as the one who was going to "handle" and "clear" his accounts of stock of the Medford Trust Company. His name appears in many transactions in that stock on the books of his employer. Without reciting the particulars, it is sufficient to say that there was evidence to support a finding that both the defendants and Mabey were engaged in buying the stock in question at prices much less than $100 per share and selling it for about $125 per share on representations that its market value per share was the latter amount.

Exceptions as to evidence remain to be considered. The witness Merchant, called by the Commonwealth, had testified that the defendant Harry R. Coshnear said to him: "Why don't you do away with your records?" There was no error in permitting the question to be put the next day on

redirect examination whether the witness had testified that this defendant "suggested that you destroy your records." The implication of the two statements appears to have been the same, but if there was a difference it was open to the witness to make any correction.  There was no error in the admission of the several circulars issued by Norton's Financial News, Inc., a concern with which the defendant Mabey had been connected but which according to testimony was in the control of one Higgins, named in the indictment as one of the conspirators.  As to the first of these circulars, the trial judge stated that it was offered against Mabey alone, but if a conspiracy was proved it might be used against all the defendants.  It is the fair inference that this ruling applied to all the circulars.  These circulars were introduced through a witness who received them: as a consequence he purchased Medford Trust Company stock from another witness, who also might have been found to be one of the conspirators, at $126 per share.  It might have been found that this stock was furnished by Mabey.  It is a familiar principle that the acts and declarations of one conspirator made in pursuance of the common object while the conspiracy is pending may be proved against each and all of the conspirators.  *Commonwealth* v. *Stuart,* 207 Mass. 563, 567.  *Commonwealth* v. *MacKenzie,* 211 Mass. 578, 581.  *Commonwealth* v. *Riches,* 219 Mass. 433, 439.

There was no error in admitting the testimony of the assistant director of the trust company division of the State banking department as to the book value of the stock of the Medford Trust Company.  He might have been found competent to testify as an expert on the subject.  There was evidence to the effect that there could be no sale of this stock without first offering it to the directors at its book value.  Therefore book value was relevant. The fact that this witness may have gained his knowledge from inadmissible sources did not render his testimony incompetent because he gave it the sanction of his general experience.  *National Bank of Commerce* v. *New Bedford,* 175 Mass. 257, 261.  Moreover, this same evidence appears to have been admitted at a later stage of the trial

without exception. Complaint concerning the charge on this point is not open because no exception was taken to the instructions given.

There was no error in permitting the cross-examination of the witness Sheeran by the assistant district attorney, who had called him. This was in the discretion of the trial judge, who found that he was a hostile witness. *Commonwealth* v. *Chance*, 174 Mass. 245. Several other exceptions as to cross-examination of witnesses are without merit and need not be examined one by one. The scope of cross-examination rests largely within the discretion of the trial judge, which does not appear to have been abused in the case at bar. *Jennings* v. *Rooney*, 183 Mass. 577, 579. *Commonwealth* v. *Perry*, 254 Mass. 520, 526, 529. *Commonwealth* v. *Barber*, 261 Mass. 281, 288.

The evidence touching the conduct of Sternberg was not incompetent. It related to sales of the stock as charged in the indictment, and check in payment therefor went to the firm of the defendant Harry R. Coshnear. While this question is rather close, we are of opinion that it falls within the authority of *Commonwealth* v. *Holmes*, 119 Mass. 195, and *Allen* v. *Fuller*, 182 Mass. 202.

There was no error in the admission of the circular issued in the name of the broker by whom the defendant Samuel Coshnear was employed. The latter was extensively engaged as an intermediary and on the broker's books appeared as holder of the stock in question. There were circumstances which had a tendency to implicate this defendant in transactions conducted by or in the name of his employer. Letters and correspondence under the firm name under which the defendant Harry R. Coshnear conducted his business were admissible against him. They were of such nature as presumably to require his personal sanction. *Commonwealth* v. *Riley*, 210 Mass. 387, 396. Testimony that one of the purchasers of stock offered it to the Medford Trust Company in March, 1931, was very remote from any issue on trial, but we are of opinion that its admission did no substantial harm. *Smith* v. *Commonwealth*, 210 Mass. 259, 262.

There was no error in excluding evidence of earnings of the trust company before the dates charged in the indictment. That matter was not relevant to the issues on trial.

No exception was saved to any part of the charge as given. Criticism now made of some parts of it need not be considered. The charge was full and accurate. It covered all the issues. It fairly stated the several contentions put forward. It pointed out clearly the distinction between expressions of opinion as to value and statements of fact as to value as shown by the fair selling price in the market. The jury were instructed that only false statements as to the latter could afford basis for a verdict of guilty.

Three requests for rulings in each case were in effect for a directed verdict of not guilty. A motion and not a request for ruling is permissible practice. Rule 71 of the Superior Court (1932). *Commonwealth* v. *Velleco*, 272 Mass. 94, 99. Considered on their merits, the requests were denied rightly. There was evidence to support the charge in the indictment, as has been shown. The other requests, so far as argued, have been discussed.

*Exceptions overruled.*