COMMONWEALTH vs. DAVID WHITE.
(and five companion cases[1]).

Suffolk.    October 15, 1973. — May 16, 1974.

Present: ROSE, KEVILLE, & GOODMAN, JJ.

*Practice, Criminal,* Disclosure of evidence before grand jury, Argument by prosecutor.    *Evidence,* Judicial discretion, Leading question, Hostile witness, Competency.    *Witness,* Impeachment, Refreshment of recollection.

At the trial of a criminal case in 1973, there was no "particularized need" for the defendants to examine the grand jury minutes for the purpose of showing an inconsistency in testimony of a witness for the Commonwealth, nor error in denial of a motion for such inspection, where the judge examined the minutes and informed counsel that he found the witness' testimony before the grand jury "completely consistent" with his testimony at trial.  [260-262]

There was no abuse of judicial discretion, nor basis for a mistrial, at the trial of a criminal case where the judge allowed the prosecutor to put leading questions to a witness for the Commonwealth for the purpose of contradicting testimony of the witness; there was no merit in a contention by the defendants that the purpose of the questions was rather to impeach the credibility of the witness by evidence of bad character in violation of G. L. c. 273, § 23.  [262-263]

In the circumstances, there was no abuse of judicial discretion nor basis for a mistrial in permitting the prosecutor at a criminal trial to ask leading questions of a witness for the Commonwealth for the purpose of refreshing his recollection.  [263-264]

---

[1] Two of the companion cases are against David White and three are against John O'Master.

Closing argument by the prosecutor at a criminal trial based on the
    appearance and testimony of witnesses and the appearance of the
    defendants, and reasonable inferences to be drawn therefrom,
    considered in connection with instructions by the judge to the jury
    that arguments were not evidence and that the evaluation of the
    testimony was for the jury, was not unreasonable or prejudicial.
    [264-265]

INDICTMENTS found and returned in Superior Court on
October 10, 1972.

The cases were tried in 1973 before *Roy, J.*

*Joseph James Balliro (Henry D. Katz* with him) for the
defendant John O'Master.

*Alfred E. Nugent* for the defendant David White.

*John T. Gaffney,* Assistant District Attorney (*Thomas
E. Dwyer, Jr.,* Assistant District Attorney, with him) for
the Commonwealth.

KEVILLE, J.   In a jury trial made subject to G. L.
c. 278, §§ 33A-33G, as amended, the defendants were
convicted on separate indictments charging each of them
with mayhem, assault and battery by means of a danger-
ous weapon and armed assault with intent to commit
murder.   They assign as error the trial judge's denial of
their motions to inspect the minutes of the grand jury, his
allowing the prosecutor to put leading questions to two of
the Commonwealth's witnesses, his denial of their
motions for mistrial based on the questioning of three
witnesses and his overruling of defense objections to the
Commonwealth's closing argument.

There was evidence from which the jury could have
found that at approximately 3:00 A.M. on September 23,
1972, Richard Paaso, the victim, with two acquaint-
ances, Donald Maley and Dana Leahy, accompanied by
a German shepherd dog belonging to a friend of Paaso,
drove to a bar adjacent to the Charles River Motel on
Soldier's Field Road in Brighton.   Leaving their car,
which also belonged to Paaso's friend, in the parking lot
nearby, they entered the bar and there saw the defendant
John O'Master.   Paaso indicated that he wished to talk to

O'Master. The latter led him to a table where he sat
between O'Master and the defendant David White.
Leahy and Maley remained a few yards away; and the
dog wandered among the tables of the bar. Paaso had
known White for about ten years. During this period he
had also become acquainted with O'Master. Paaso told
the defendants that he had come to thank them for
helping his friend Leahy. O'Master asked him why he
was interested and if any of his money was involved.
Paaso replied: "No." Whereupon O'Master said to him,
"Are you some type of tough guy?" and, "We are the
power around here." Then, without warning, O'Master
reached over and "grabbed" Paaso's ear. Paaso reached
up and felt blood rushing down his face. He stood up and
both defendants closed in on him. He felt "quick
thrusts" in his stomach coming from White's direction.
He panicked, overturned a chair, ran from the lounge
and hid in a ditch. As he was running, he noticed that
O'Master struck the dog. He remained in the ditch for
several minutes, and then sought assistance from Boston
police in a patrol wagon which had stopped nearby. The
police drove him to a hospital. He had sustained serious
injuries including cuts on his stomach, chest, face and
neck. His left ear was nearly severed.

Later on September 23, the mutilated body of the dog
was found in the parking lot by a motel maintenance
man, Bucelwicz, who, at the suggestion and with the
assistance of the defendant White, removed the body of
the dog to a nearby field. There it was later discovered
by the dog's owner whose car was also found in the
parking lot.

1. In their joint brief the defendants argue that it was
error for the judge to deny their motion to inspect the
minutes of the grand jury.[2] At the close of the direct
examination of Paaso, the defendants moved to obtain
the grand jury minutes alleging that Paaso had previously

---

[2] White's assignment of error 4; O'Master's assignment 2.

told a story inconsistent with his testimony at trial, viz., that he had been attacked by an unknown assailant while walking the dog. After reading the minutes, the judge informed counsel that he found Paaso's testimony before the grand jury to be "completely consistent" with his testimony at trial. There was no error in the denial of the motion. The effect of the recent ruling of the Supreme Judicial Court in *Commonwealth* v. *Stewart,* 365 Mass. 99, 102-108 (1974), conferring a right of access to grand jury testimony of Commonwealth witnesses relating to the subject matter of their testimony at trial without a showing of a "particularized need," is prospective only. *Commonwealth* v. *Lamattina, ante,* 203, 210 n. 3 (1974).

We therefore consider the defendants' argument in light of the law prior to the *Stewart* case. Prior thereto, a defendant was not entitled to examine grand jury minutes as matter of right. *Commonwealth* v. *Giacomazza,* 311 Mass. 456, 462 (1942). A motion to permit inspection of such minutes was addressed to the discretion of the judge. *Commonwealth* v. *Balliro,* 349 Mass. 505, 518 (1965). It was deemed appropriate for the judge to review the minutes to determine whether an inconsistency existed between the witness' testimony at trial and that given before the grand jury. *Commonwealth* v. *Doherty,* 353 Mass. 197, 209-210 (1967), cert. den. 390 U. S. 982 (1968), overruled on other grounds in *Connor* v. *Commonwealth,* 363 Mass. 572, 574 (1973). The presence of inconsistency would constitute a "particularized need" for the minutes (*Commonwealth* v. *Carita,* 356 Mass. 132, 141-142 [1969]; *Commonwealth* v. *De Christoforo,* 360 Mass. 531, 534-536 [1971]; *Commonwealth* v. *Dominico,* 1 Mass. App. Ct. 693, 709-710 [1974]), warranting their examination by defense counsel. *Commonwealth* v. *Ladetto,* 349 Mass. 237, 244-245 (1965). *Commonwealth* v. *Abbott Engr. Inc.,* 351 Mass. 568, 578-579 (1967).

Where, as here, the judge found no inconsistency be-
tween Paaso's testimony before the grand jury and his
testimony at trial, no "particularized need" for access to
the minutes was shown. *Commonwealth* v. *Kiernan,*
348 Mass. 29, 36 (1964), cert. den. sub nom. *Gordon* v.
*Massachusetts,* 380 U. S. 913 (1965). *Commonwealth* v.
*Dominico, supra.* In addition, counsel for the defend-
ants thoroughly explored in extensive cross-examination of
Paaso and other witnesses Paaso's initial statement, which
he admitted having made, that he had been attacked by
an unknown assailant. The jury's attention was emphat-
ically directed to the credibility of Paaso on this point.
Coupled with the judge's ruling that Paaso's testimony at
trial was "completely consistent" with that given before
the grand jury, no injustice resulted to the defendants
from the denial of the motion.

2. The defendants next contend that the prosecutor's
examination of the witness Dana Leahy was improper
and that the judge erred in denying their motions for
mistrial based on the alleged improper questioning of this
witness.[3] At a bench conference before Leahy took the
stand, the prosecutor informed the judge that he expected
that Leahy would lie during his testimony. During the
early portion of Leahy's testimony, when he denied
participating in certain activities with Paaso on the
evening in question, the prosecutor put to him a series of
leading questions over the objections of the defendants.

Although the judge did not formally declare Leahy to
be a hostile witness until well along in the prosecutor's
examination, it was in his discretion to allow leading
questions up to that point and thereafter. *Common-
wealth* v. *Coshnear,* 289 Mass. 516, 527 (1935). *Com-
monwealth* v. *Jones,* 319 Mass. 228, 229-230 (1946).
*Commonwealth* v. *LaFrance,* 361 Mass. 53, 57 (1972).
In *Commonwealth* v. *Flynn,* 362 Mass. 455, 467 (1972),
the court reiterated the language of *Giuffre* v. *Cara-*

---

[3] White's assignments of error 8-16; O'Master's assignments 6-13.

*pezza,* 298 Mass. 458, 460 (1937), viz., "[W]e are aware of no decision in this Commonwealth in which exceptions have been sustained because of the allowance of leading questions."

We find no merit in the further argument of the defendants that the examination by the prosecutor violated the provisions of G. L. c. 233, § 23, in attempting to impeach Leahy's credibility by evidence of "bad character." A review of the testimony makes it apparent that the objective of this questioning was not to elicit evidence of Leahy's criminal activities, but rather to have him testify to his whereabouts during and after the assault upon Paaso including his alleged return to Paaso's apartment later that morning, and to contradict his testimony that he was in bed at home at the time of the incident. Evidence material to prove an issue in a case is not incompetent simply because it reveals criminal activity on the part of a witness. *Commonwealth* v. *Dominico, supra,* at 713. *Commonwealth* v. *West,* 312 Mass. 438, 441 (1942).

3. The defendants raise similar objections to the use of leading questions and the denial of their motions for a mistrial in the examination by the prosecutor of the witness Bucelwicz.[4] The questions centered on whether Bucelwicz, prior to the trial, had had a conversation with the defendants about the events of September 23 and on whether the witness had been put in fear by the defendants. The witness' response to each of these questions was in the negative. The prosecutor was permitted to attempt to refresh the memory of the witness by referring to an alleged prior conversation with the prosecutor in the presence of a third person through the use of leading questions. As stated previously, the judge was within the bounds of discretion in allowing leading questions in these circumstances. *Commonwealth* v. *Fiore,* 364 Mass. 819, 825-826 (1974), and cases cited.

---

[4] White's assignments of error 17 and 18; O'Master's assignments 14 and 15.

The judge forestalled the possibility of prejudice, which might have resulted from this line of questioning, by repeatedly instructing the jury that questions to which negative answers were given were not to be considered by them. It is our rule that jurors may normally be expected to follow instructions to disregard matters withdrawn from their consideration. *Commonwealth* v. *Bellino*, 320 Mass. 635, 645 (1947), cert. den. 330 U. S. 832 (1947). *Commonwealth* v. *Crehan*, 345 Mass. 609, 613 (1963). *Commonwealth* v. *Gordon*, 356 Mass. 598, 604 (1970). Contrast *Commonwealth* v. *Fillippini, ante,* 179, 187 (1974). The record does not establish that the questions of the prosecutor were without foundation or were put in bad faith. See *Commonwealth* v. *Granito*, 326 Mass. 494, 498 (1950).

4. The defendants moved for a mistrial based upon the direct examination by the prosecutor of a Boston police department detective.[5] The detective was permitted, over the objection and exception of the defendants, to testify that Paaso had given him names (but not how many names) during the detective's conversation with him on the day following the assault. Since neither the question nor the answer implicated the defendants, the admission of the answer was harmless. All further questions put to the witness seeking to develop the circumstances leading to the arrest of the defendants were excluded by the judge. Following the exclusion of a question by the prosecutor, whether the defendants had at some time been placed in custody, the judge directed the jury to disregard the question and instructed them that the arrest or the placing in custody of an individual is no evidence of guilt or any indication of guilt. We assume that the jury heeded the timely instructions of the judge. *Commonwealth* v. *Bellino, supra.*

5. Finally, the defendants argue that comments by the prosecutor during closing argument were prejudicial and

---

[5] White's assignment of error 22; O'Master's assignment 18 and 19.

should have been struck.[6] The prosecutor called attention to the defendants' appearance, to the testimony that they drove Cadillacs and to inferences which the jury might draw from the defendants' statement that "we are the power around here." He described the demeanor of the witness Bucelwicz while on the witness stand as "shaking in his boots," and again referred to the remark attributed by Paaso to the defendants, "we are the power."

Certain of the prosecutor's remarks in argument were ordered struck by the judge; and we need not consider other objections of the defendants to the argument to which appropriate exceptions and assignments of error were not taken, particularly where, as here, the record fails to reveal "a substantial risk of a miscarriage of justice." *Commonwealth v. Franks,* 365 Mass. 74, 76 (1974). *Commonwealth v. Foley,* 358 Mass. 233, 236 (1970). The argument of the prosecutor appears to have been based upon the appearance and testimony of witnesses and the appearance of the defendants along with reasonable inferences which the jury might have drawn therefrom. The judge's instructions made it clear to the jury that arguments were not evidence and left to the collective memory of the jury the evaluation of the testimony. It is our conclusion that under standards of permissible argument the prosecutor's comments were not unreasonable. *Commonwealth v. Velleco,* 272 Mass. 94, 99 (1930). *Commonwealth v. Smith,* 342 Mass. 180, 187-188 (1961). *Commonwealth v. Balakin,* 356 Mass. 547, 550-553 (1969). *Commonwealth v. Heard,* 360 Mass. 855 (1971).

Other assignments of error[7] not argued in the defendants' brief are deemed to have been waived. Rule

---

[6] White's assignment of error 26; O'Master's assignment 23.

[7] White's assignments of error 1-3, 5-7, 19-21, 23-25; O'Master's assignments 1, 3-5, 16, 17, 20-22.

1:13 of the Appeals Court, 1 Mass. App. Ct. 889 (1972). *Commonwealth* v. *Dominico,* 1 Mass. App. Ct. 693, 723 (1974).

*Judgments affirmed.*