COMMONWEALTH *vs.* PETER F. LAFRANCE.

Bristol. November 1, 1971. — February 4, 1972.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Manslaughter. Motor Vehicle,* Operation. *Evidence,* Conflicting statements of witness, Hostile witness, Contradiction of witness.

Convictions of manslaughter and various motor vehicle offences were warranted on evidence that the defendant, an unlicensed driver, under influence of drugs, driving a car at night in excess of legal speed, struck and killed a person standing at the side of a highway, dragged him 121 feet, and then sped away with extinguished lights. [54–56]

If a witness makes inconsistent statements, the trier of fact may believe some of the statements and disregard others. [56]

Where the judge at a criminal trial could have found that a witness for the Commonwealth was hostile, there was no error in allowing the prosecutor to cross-examine him and ask him leading questions. [57]

Where there was an inconsistency between testimony of a witness called by the Commonwealth in a criminal case and a previous statement by him and he was fully apprised of the time, place and contents of the prior statement and was given full opportunity to explain it in accordance with G. L. c. 233, § 23, there was no error in allowing the Commonwealth to introduce the prior statement for impeachment purposes accompanied by instructions to the jury that they were to consider the statement only as affecting the witness' credibility. [57]

INDICTMENTS found and returned in the Superior Court on February 3, 1971.

The cases were tried before *Smith, J.*

*Alexander Whiteside, II (Reuben Goodman* with him) for the defendant.

*Edward A. Roster,* Assistant District Attorney, for the Commonwealth.

REARDON, J.   The defendant appeals in a case made subject to G. L. c. 278, §§ 33A–33G, from convictions on four indictments charging him with manslaughter, leaving the scene of an accident after causing personal injury, operating without a license, and operating so as to endanger.   We consider several assignments of error.

1. The defendant alleges error in the denial by the trial judge of motions for directed verdicts on grounds of insufficient evidence.   The evidence is summarized as follows.

On October 6, 1970, around 11 P.M., James Butler went to the assistance of his son Paul whose car was stalled on Route 140 between Taunton and Norton in the southbound breakdown lane, with parking lights illuminated.   It was a clear evening and the road was dry, with medium traffic.   He drove by his son's car and proceeded to back up to it in order to attach a tow chain.   As Paul was directing his father at a position by the left rear mudguard of his father's car, he was struck by a car proceeding southbound at a speed in excess of fifty miles an hour, and dragged approximately 121 feet.   This car did extensive damage to the side of James Butler's car.   About 500 feet down the road the lights of the car were extinguished and it kept going. Within several minutes the police arrived and took Paul to a Taunton hospital where he was pronounced dead on arrival, having sustained a fractured skull and internal injuries.

About 9 P.M. on the same day the defendant and one Richard Brown had gone to the apartment of one Joseph Machado in Taunton.   They were asked by Mrs. Machado to "watch the house" while Machado, his wife, and two cousins went to a store.   When the Machados returned in the early morning of October 7, the defendant told them about an accident on Route 140.   Thereafter the defendant and Brown spent the night at the Machado apartment, leaving before Machado arose the next morning.   They returned that afternoon, at which time Mrs. Machado informed them they were being blamed for

"a murder." They appeared to be "shook up," and asked her to verify that they were present in the apartment all of the previous night. Another witness to this conversation described the defendant as looking "scared" at the time. Brown then stated he was going to get some money from his grandmother. He returned later in the afternoon and said he had been unable to procure any. Either Brown or the defendant then said, "We better ditch it."

On October 7, one Wendall Frost received a call from the defendant, whose voice he recognized, asking him if he had any money, and stating that he "wanted to take off." In response to an inquiry for the reason, the defendant related his involvement in the accident, and although Frost in testimony was somewhat confusing in his language, on cross-examination he did state that the defendant said that "he hit Paul."

On October 13 and 14, the Taunton police interviewed the defendant and Brown at the police station. At this time Machado appeared in response to a call from the police and, according to him, was advised by the defendant, "Tell them that you were there and you got home at 10. You didn't leave; you stayed home." Machado, however, told the police that he did not arrive home until 12:30 A.M. on October 7. Upon hearing this statement the defendant commenced to cry.

Brown testified for the Commonwealth to the effect that they had been at the Machado apartment on October 6 and until 8:15 A.M. the next morning, and that the Machados returned to their apartment at 11:15 P.M. He stated he had taken methadone pills that night beginning around 6 P.M., and denied any knowledge of a telephone call to Frost.

The defendant testified that he had been in the Machado apartment consistently through the night of October 6, and that the Machados returned about 10 P.M. on that evening. He denied the telephone call to Frost or talking about "ditching it." He claimed that Brown had made a telephone call to Frost, denied telling

Machado that there was an accident on Route 140, and admitted taking three methadone pills that night. He stated this was the first time he had been "high" on methadone and that he didn't know whether he would have been in a condition to drive a car.

We are of the opinion that the evidence, the sufficiency of which is challenged by the defendant, was more than adequate for the jury to have concluded that the defendant and Brown were in the motor vehicle which struck and killed Paul Butler. The defendant's knowledge of the accident shortly after it occurred, his efforts to obtain alibi testimony from the Machados, and his admissions of guilt in his telephone call to Wendall Frost strongly support that conclusion. The defendant argues, and with warrant, that Frost's testimony was confusing on the point whether the defendant ever stated to him that he, rather than Brown, was the driver of the hit and run vehicle. The question is close but the jury could have credited the Frost assertion that the defendant said, "he hit Paul," and disregarded his assertions elsewhere that the defendant said, "They hit Paul." This is in accordance with the rule that "if a witness in testifying makes inconsistent statements, the jury may believe some of the statements and disregard others." *Kettleman* v. *Atkins*, 229 Mass. 89, 92. See *Lowell* v. *Boston Storage Warehouse Co.* 280 Mass. 234, 237.

The jury also could have found that an unlicensed driver under the influence of drugs driving a car in excess of the legal speed limit struck the decedent, dragged him 121 feet and then sped away with extinguished lights. On these facts the Commonwealth's burden of proof of showing wanton and reckless conduct was fully sustained. *Commonwealth* v. *Arone*, 265 Mass. 128. See *Bellenger* v. *Monahan*, 282 Mass. 523, 528; G. L. c. 90, § 24 (1) (a), as amended through St. 1963, c. 369, § 2.

2. The defendant argues, in assignment of error No. 2, that the trial judge erred "[i]n permitting the prose-

cution to ask Richard Brown questions, the purpose and effect of which were improperly to put before the jury the contents of a statement which Richard Brown allegedly had made to the police outside the defendant's presence and which [were] . . . inadmissible hearsay. The defendant contends that these questions were prejudicial to him by their suggestion that he was guilty of the crimes for which he was indicted."

The content of Brown's statement, given to the police on the night of October 13–14, was that he and the defendant had driven to Attleboro in a stolen car, returned to Taunton, struck Paul Butler, and had taken methadone earlier that night. When called to the witness stand by the Commonwealth, Brown denied that he and the defendant ever left the Machado apartment the night of October 6–7. The judge could have found that Brown was a hostile witness and allowed the prosecution to cross-examine him. *Commonwealth* v. *Coshnear,* 289 Mass. 516, 527. *Commonwealth* v. *Hartford,* 346 Mass. 482, 487. Leading questions in these circumstances were not improper, *Commonwealth* v. *Granito,* 326 Mass. 494, 498, and no abuse of discretion was shown, *Commonwealth* v. *Coshnear, supra,* 527.

Furthermore, there was no error in allowing the Commonwealth to introduce Brown's statement for impeachment purposes. *Goodney* v. *Smith,* 354 Mass. 734, 737. In compliance with the requirements of G. L. c. 233, § 23, the witness was fully apprised of the time, place, and content of the prior statement, and was given full opportunity to explain it. The jury were clearly instructed that they were to consider this only as affecting the witness's credibility. Also, in his charge the judge rather elaborately reëmphasized what he had previously stated to the jury in this regard. In addition, other testimony was adduced outside the Brown statement which linked the defendant to the crime. This fact distinguishes this situation from those to which the defendant has called our attention in certain cited Federal cases. See *Douglas* v. *Alabama,* 380 U. S. 415;

*Young* v. *United States,* 97 F. 2d 200, 205–206 (5th Cir.) ; *United States* v. *Rudolph,* 403 F. 2d 805, 806 (6th Cir.).

3. Finally, the defendant argues that the judge erred in refusing to instruct the jury that Officer Richard Dunlap's testimony concerning the statement which Brown had signed was admissible only for impeachment. Notwithstanding what Brown had testified, the officer, one of his interrogators, stated that he was normal when his statement was taken. When defence counsel asked, "Is this [the statement] to be offered as to impeach Brown only? ", the judge replied, "Yes; corroboration." Thereafter counsel sought again to have the judge instruct the jury that Dunlap's testimony was offered solely to impeach. The judge refused this request and denied a motion that the testimony be struck. It is our view that the judge's earlier affirmative response to counsel's question constituted a sufficient ruling on this matter. Moreover, the judge had previously given explicit instructions that Brown's statement to the police was to go only to the question of his credibility. We thus cannot agree with the defendant's contention that the judge's failure to grant the requested instructions permitted the jury to consider the statement as substantive evidence.

*Judgments affirmed.*