## COMMONWEALTH vs. JOHN R. CAMPBELL.

Middlesex. November 9, 1984. — February 19, 1985.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, & O'CONNOR, JJ.

*Motor Vehicle*, Homicide, Operating under the influence. *Homicide. Practice, Criminal,* Foreman of jury, Instructions to jury, Argument by prosecutor. *Statute,* Construction. *Due Process of Law,* Vagueness of statute.

At the trial of indictments charging vehicular homicide while under the influence of an intoxicating substance, the evidence, including evidence that the defendant had been driving faster than the posted speed limit, that he had crossed the center line on the highway just before the accident, that he had failed to slow down or stop immediately after the impact, and that he had carried one of the victims on the hood of his car for about one hundred feet, warranted a finding that the defendant had negligently operated his motor vehicle in addition to driving under the influence of intoxicating liquor. [82-83]

Although the judge in a criminal case should have appointed the foreman of the jury, rather than allowing the jury to elect a foreman, this irregularity did not amount to reversible error in the absence of any proof of prejudice to the defendant. [83-84]

Where defense counsel at the trial of a criminal case introduced a witness's testimony at a probable cause hearing to impeach the witness's credibility and it appeared that the prosecutor had a version of the transcript different from that of defense counsel because two different stenographers had been used at the probable cause hearing, the judge's decision to permit defense counsel and the prosecutor to use their respective copies during subsequent questioning was not an improper restriction on the defendant's use of a District Court transcript to impeach the credibility of a witness. [84-85]

There was no merit to a defendant's contention that the judge at the trial of indictments charging vehicular homicide while under the influence of intoxicating liquor had failed properly to instruct the jury on the "endanger the lives and safety" aspect of the offense. [85]

On an appeal from a drunk driving conviction there was no merit to the defendant's contention that G. L. c. 90, § 24G, was unconstitutionally ambiguous on the ground that the same proof would have warranted his conviction on either the felony or the misdemeanor provisions of the statute. [86-87]

At the trial of a vehicular homicide case, the judge did not err in instructing
    the jury that, if the defendant operated negligently so that the lives of
    the public might be endangered, they were not to consider the victims'
    contributory negligence as excusing the defendant's conduct. [87]

At the trial of a vehicular homicide case the prosecutor's repeated use in his
    closing argument of the phrase, "liar, liar," to characterize the defend-
    ant's position on the credibility of the Commonwealth's witnesses did
    not create a substantial risk of a miscarriage of justice. [88]

INDICTMENT found and returned in the Superior Court De-
partment on March 29, 1983.

The case was tried before *John Paul Sullivan*, J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*John R. Campbell*, pro se.

*Joseph P. Musacchio*, Assistant District Attorney, for the
Commonwealth.

ABRAMS, J. The defendant appeals from his conviction in
the Superior Court of two counts of homicide by a motor
vehicle while under the influence of an intoxicating substance.
G. L. c. 90, § 24G (*a*).[1] The conviction arose from a 1982
motor vehicle accident resulting in the deaths of two pedes-
trians. We transferred the case here on our motion. We affirm.

The defendant argues that the judge erred by denying his
motion for a required finding of not guilty because there was
insufficient evidence of either the defendant's negligence or a
causal relationship between the defendant's actions and the
victims' deaths. Further, the defendant challenges the judge's
decision to permit the jury to nominate a foreperson and argues
that the judge impermissibly restricted the defendant's use of
a District Court transcript to impeach a witness's credibility.
He also contends that the judge improperly instructed the jury
that simple negligence is a sufficient basis on which to convict
the defendant of vehicular homicide under G. L. c. 90, § 24G

---

[1] On November 1, 1983, the defendant was sentenced to two concurrent
ten-year terms at the Massachusetts Correctional Institution, Concord. On
November 15, 1984, the trial judge revoked the sentences, revised them to
concurrent one-year terms, and ordered that the sentences be deemed served.
Because the defendant has completed his sentences, we do not reach any
of the defendant's arguments concerning parole eligibility under G. L. c. 90,
§ 24G (*a*).

(*a*). In addition, the defendant argues that the substantive pro-
visions of G. L. c. 90, § 24G, are unconstitutionally vague[2]
because a felony conviction under § 24G (*a*) could result from
the jury's inferring negligence from the fact of operating under
the influence. This result, he asserts, impermissibly blurs the
distinction between the elements required to be proved for a
felony under subsection (*a*) and a misdemeanor under subsec-
tion (*b*) of G. L. c. 90, § 24G.

Although the defendant did not object at trial to the following
points, he now argues them on appeal: (1) the judge failed to
instruct the jury that, if the victims' conduct was the sole or
proximate cause of the victims' deaths, then the defendant
cannot be found guilty; (2) the judge should have instructed
the jury that operating a vehicle under the influence is not
alone sufficient to prove negligence because a person can still
use reasonable and due care in driving; and (3) the prosecutor's
closing argument was improper. We affirm.

We summarize the evidence. At approximately 8:15 P.M.
on October 7, 1982, Serafina Mendes and August Silvia were
struck on Route 28 in Stoneham by an automobile driven by
the defendant. Silvia, eighty years of age, died at the scene
of the accident and Mendes, sixty-five years of age, died ap-
proximately forty-five minutes after arriving at the hospital.

Route 28 in Stoneham has two northbound and two south-
bound lanes divided by a double yellow line. The posted speed
limit is thirty-five miles an hour and on the evening of Octo-

---

[2] G. L. c. 90, § 24G, as amended by St. 1982, c. 376, §§ 1 & 2, provides:

"(*a*) Whoever, upon any way or in any place to which the public has a
right of access . . . operates a motor vehicle while under the influence of
intoxicating liquor, . . . and so operates a motor vehicle recklessly or
negligently so that the lives or safety of the public might be endangered,
and by any such operation so described causes the death of another person,
shall be guilty of homicide by a motor vehicle while under the influence
of an intoxicating substance . . . .

"(*b*) Whoever, upon any way or in any place to which the public has a
right of access . . . operates a motor vehicle while under the influence of
intoxicating liquor, . . . or whoever operates a motor vehicle recklessly or
negligently so that the lives or safety of the public might be endangered
and by any such operation causes the death of another person, shall be
guilty of homicide by a motor vehicle . . . ."

ber 7, the area was well lit,[3] the road was dry, and there were no obstructions between the sidewalks and the road itself.

The defendant was traveling in the northbound lane. One Michael Scalisi was traveling southward in the passing lane on Route 28 and saw the defendant's vehicle cross the double yellow line dividing the northbound and southbound lanes and "partially veer[ ] into [Scalisi's] lane." Scalisi maneuvered his car into the other southbound lane. Thereafter, Scalisi saw something go over the top of the defendant's car, and he heard the sound of glass shattering and paper dragging. He did not hear the sound of a horn or brakes squealing. He saw the defendant's car move over to the other lane and slow down. At the time the defendant's car passed Scalisi's car, Scalisi estimated the speed of the defendant's car to be approximately forty miles an hour.

At approximately 8:15 P.M., as Ann and John Thomas were leaving a business establishment on Route 28, they heard a thud. Both looked toward Route 28 and saw a hat fly over the top of the defendant's car. They did not hear a horn sound or brakes squeal. John Thomas estimated the defendant's speed as between forty to forty-five miles an hour. Ann Thomas estimated the speed to be forty-five miles an hour. John Thomas saw the body of Serafina Mendes[4] and ran over to see if he could be of assistance. He noticed a man's shoe and looked northward. He saw a man's body (August Silvia) about fifty yards away from the Mendes body.

Another citizen, Edward Reynolds, traveling southbound, saw two bodies in the road, some distance apart from each other. He asked his wife, the driver, to pull over. He left his car to check Silvia's vital signs. At that time he observed the defendant's car. The windshield was shattered. The windshield had what appeared to be skin and blood stains on it. When Reynolds approached the defendant's car, he noticed that the defendant could not stand or walk without using his car for

[3] There are street lights along Route 28, as well as illuminated business signs.

[4] Mendes was wearing a light-colored dress and a white sweater.

support. Reynolds said to the defendant, "You're drunk. You idiot." Reynolds told the defendant that he (the defendant) had hit two people while he was drunk. The defendant responded, "What's the big deal?" Reynolds then said, "One person is dead. The other person is really hurt and could die." Reynolds continued, "You're drunk. It's bad enough you get in an accident, period, natural things that happen, but you're drunk. There is no need for it." The defendant said, "So." Reynolds said that the defendant's eyes looked like the eyes of someone who was very drunk. Reynolds smelled hard liquor on the defendant's breath.

John Thomas heard Reynolds say to the defendant, "You're . . . drunk." The defendant said he was not. He heard Reynolds again say, "You're drunk. You hit them." The defendant paused and said, "Yes, I am." The defendant paused again and then said, "I hit them."

The police arrived. One officer approached the defendant and read the Miranda warnings to him. The officer smelled alcohol on the defendant's breath and observed the defendant walk in an unsteady manner. The defendant's speech was slurred. The officer concluded that the defendant was under the influence of intoxicating liquor. A second officer asked the defendant to walk toward his (the defendant's) car. The defendant staggered as he walked. The officer smelled the odor of alcohol on the defendant's breath, saw that the defendant's eyes were bloodshot, and arrested the defendant.

The police officers took the defendant to the police station, where he was informed of the charges against him. All the officers observed indications that the defendant was under the influence of intoxicating liquor. One officer said that the defendant had difficulty negotiating the stairs in the station and following directions for the fingerprinting. That officer stated that, after he explained the fingerprinting process and asked for the defendant's right hand, the defendant gave him his left hand. The officer then physically took the defendant's right hand and printed the thumb. To further requests for specified fingers, the defendant either put out the wrong finger or did not respond at all.

The defense admitted that the road was clear and well-lit and that the defendant never saw the victim Mendes, who it was later learned was wearing white and light-colored clothing. The defendant claimed that his speed was between thirty and thirty-five miles an hour, that he did not cross the double yellow line separating the north and southbound lanes, and that he was not drunk or under the influence of intoxicating liquor. He said he was three to five feet from one of the two victims, later identified as Silvia, when he first saw him and therefore did not have time to sound the horn or apply the brakes of his automobile before impact. He said he did not hit the brakes immediately after the impact because he thought this would further injure the man on the car hood, and that he instead gradually slowed down and pulled the car over to the right side of the road. The defendant said that his irregular walking and his need for support was due to an operation four weeks earlier for boils on his buttocks. He asserted that, as he got out of his car, he hit the surgical wounds and was in "excruciating" pain. The defendant admitted to drinking a Manhattan at a Chinese restaurant while he waited for a take-out order. The defendant also asserted that an oncoming car had its high beam headlights on and that just before the accident he flicked his lights at the other car.

1. *Sufficiency of the evidence.* The defendant argues that the judge erred in denying his motion at the close of all evidence for a required finding of not guilty because the Commonwealth failed to present sufficient evidence to establish either the defendant's negligence or a causal relationship between the defendant's actions and the victims' deaths. Since the defendant challenges the sufficiency of the evidence supporting his conviction, we review the evidence in the light most favorable to the Commonwealth. *Commonwealth* v. *Reid,* 384 Mass. 247, 257 (1981). There is no error. On appeal the defendant does not claim there was insufficient evidence of driving under the influence of intoxicating liquor. He limits his challenge to the claim that there is insufficient evidence of negligence apart from driving under the influence.

The Commonwealth presented ample evidence for the jury to conclude that, independent of driving under the influence of intoxicating liquor, the defendant negligently operated his motor vehicle. The jury could infer negligence from testimony that the defendant drove faster than the posted speed limit,[5] crossed the center line on Route 28 immediately before the accident, failed to slow down or stop immediately after the impact, and carried one of the victims on the hood of his car for approximately one hundred feet. See *Commonwealth* v. *LaFrance*, 361 Mass. 53, 56 (1972). The area was well-lit, the weather clear, and the traffic normal. The jury also could have inferred that the defendant was inattentive (and therefore negligent) from the fact that the defendant did not see one of the victims until the victim was three to five feet in front of the automobile and never saw the other victim, who was dressed in white and light-colored clothing. Although the defendant mentioned that the high beam lights of an oncoming car somewhat obstructed his view, the jury could choose not to believe him.[6] The evidence was thus sufficient for the jury to find that the defendant drove under the influence and that he also drove negligently, thereby causing the victims' deaths.

2. *Appointment of foreperson.* The judge permitted the jurors to elect the foreperson of the jury. The defendant duly objected and argues this as error on appeal. The defendant is

[5] Although evidence of violation of a statute, such as the one governing the speed limit, is not negligence per se, it can validly be considered, in combination with other evidence, in determining negligence. *Kralik* v. *LeClair*, 315 Mass. 323, 326 (1943). *Falk* v. *Finkelman*, 268 Mass. 524, 527 (1929).

[6] In his brief, the defendant concedes that the jury could also have found that the defendant was not merely under the influence of intoxicating liquor, but that his mental and physical faculties were actually substantially impaired. If the jury so found, this might be independent evidence of negligence, above and beyond proof of the element of "under the influence." *Commonwealth* v. *Scott*, 359 Mass. 407, 409-410 (1971) (evidence that defendant's physical and mental faculties were substantially impaired by the effect of alcohol warranted a finding of wanton or reckless conduct). But because, even without evidence of substantial impairment, there is ample evidence of negligence which the jury could choose to believe, we need not reach the issue whether the statute allows the jury to infer negligence from drunkenness.

correct that the judge should have appointed the foreperson of the jury, rather than allowing the jury to elect a foreperson. G. L. c. 234, § 25. But the defendant offers only speculation as to prejudice suffered by the judge's error. If the defendant suffers no prejudice by irregularity in the empanelling process, the error is not reversible. *Commonwealth* v. *McKay,* 363 Mass. 220, 223 (1973). See *Commonwealth* v. *Campbell,* 378 Mass. 680, 694 (1979). General Laws c. 234, § 32, providing that no irregularity in the jury empanelling process shall be sufficient to set aside a verdict unless the objecting party has been injured or has objected before the verdict, requires some proof of prejudice even if counsel has made a timely objection. See *McKay, supra.* The selection of a foreperson in an irregular manner also must be shown to have prejudiced the defendant before reversal is required.

3. *The transcript.* The defendant contends that the judge improperly restricted his use of a District Court transcript to impeach the credibility of a witness. At trial the witness Scalisi stated that the car driven by the defendant had been going "[a]bout forty miles an hour." On cross-examination, defense counsel impeached Scalisi's credibility by introducing in evidence the witness's testimony at the probable cause hearing that the car had been traveling "thirty-five miles an hour or thereabouts."

The prosecutor objected to the defendant's use of the transcript because two different stenographers were used at the probable cause hearing and the transcript pages were numbered differently. After a conference with counsel, the judge concluded that there were two different official transcripts and permitted counsel to use their respective copies during subsequent questioning. Defense counsel then continued the cross-examination of Scalisi with his version of the transcript. On redirect examination, the prosecutor rehabilitated Scalisi's testimony by referring to his version of the transcript, which stated that Scalisi had testified at the probable cause hearing that the defendant's vehicle had been traveling thirty-five to forty miles an hour. The trial judge then instructed the jury that counsel were using different transcripts, but that both were

admissible and that the language used from either transcript was evidence that could be considered in assessing credibility.[7] Contrary to the defendant's contention, the judge did not limit the defendant's cross-examination; rather, he permitted both the defendant and the Commonwealth to use their respective, although different, transcripts. The defendant remained fully able to continue his impeachment of Scalisi, and the judge committed no error by admitting both transcript versions in evidence.[8]

4. *The instructions.* At the conclusion of the instructions, the defendant objected because the jurors could "ground one of the elements of the major felony offense here [§ 24G (*a*)] on mere negligence as opposed to negligence which endangers the lives and safety of the public." The short answer is that the judge did not so instruct. The judge told the jurors in substance that they had to find that the defendant operated a motor vehicle on a public way while he was under the influence of intoxicating liquor *and* "that the operation of the vehicle was . . . either reckless . . . or, in the alternative, that the vehicle was operated in a negligent manner so that the lives and safety of the public might be endangered." He further instructed that "such operation [must] cause[ ] the death of another person." Furthermore, in the charge the judge defined recklessness and told the jurors three times that the Commonwealth must prove (in addition to the other elements) that the defendant had operated his vehicle negligently so that the lives and safety of the public might be endangered. Thus, there is no merit to the defendant's claim that the judge did not fully explain the "endanger the lives and safety" aspect of the offense to the jurors.[9]

---

[7] Neither party asked the judge to listen to the tape, nor did the defendant seek a voir dire to see if the differences between the transcripts could be reconciled.

[8] We note that the other witnesses who testified as to the speed of the defendant's vehicle all estimated the speed to be forty to forty-five miles an hour.

[9] The instructions fully explained each element of the offense.

5. *Construction of the statute.* On appeal, the defendant contends that in this case the jury could have inferred negligence solely from the finding that he had operated his vehicle under the influence of intoxicating liquor. This result, he argues, would contravene the intention of the Legislature to convict on a felony charge of vehicular homicide only if the jury finds that the defendant *both* drove under the influence *and* negligently or recklessly operated a motor vehicle. If the jury convicted the defendant by inferring negligence only from the fact that he drove under the influence, then only one element of the crime would have been proved. Thus, the defendant argues, the statute is ambiguous as to what must be proved to convict. See note 6, *supra.*

The judge's instructions, however, clearly stated that the Commonwealth must prove that the defendant acted negligently so that the lives and safety of the public might be endangered and that that proof must be in addition to proof that he operated under the influence of intoxicating liquor. The law assumes that the jury have understood and followed the directions of the judge in matters of law. *Commonwealth* v. *Anthes,* 5 Gray 185, 200 (1855). Further, the judge's instructions faithfully followed the statute. General Laws c. 90, § 24G (*a*), reads that a felony is committed if a defendant "operates a motor vehicle while under the influence of intoxicating liquor, . . . *and* so operates a motor vehicle recklessly or negligently so that the lives or safety of the public might be endangered, and by any such operation . . . causes the death of another person" (emphasis supplied). In contrast to the requirements for conviction of a felony under § 24G (*a*), the jury may find a defendant guilty of a misdemeanor under § 24G (*b*) if they find that he operated his vehicle while under the influence and caused the death of another.[10] Because a finding of operating under the

---

[10] At oral argument, the defendant suggested that, in order to convict him under § 24G (*a*) (felony), the jury would have to find that he operated the automobile recklessly. He further intimated that, if the defendant operated his vehicle negligently while under the influence, that would amount to no more than a violation of G. L. c. 90, § 24G (*b*) (misdemeanor). The plain words of the statute do not lend themselves to such an interpretation.

influence alone will not support a conviction under § 24G (*a*), the felony and misdemeanor provisions are not proved by the same elements and the statute is therefore not ambiguous.

6. *Contributory negligence of the victims.* The defendant now contends that the judge erred in failing to instruct the jury that, if the victims' conduct was the sole or proximate cause of the accident, the defendant could not be found guilty. Because the defendant did not raise this specific objection at trial, however, our review is limited to determining whether there is a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Reid,* 384 Mass. 247, 257-258 (1981). We find no such danger here. Although the defendant correctly argues that, if the victims' conduct was the sole cause of the accident, he could not be found guilty, see R. Perkins, Criminal Law 703 (2d ed. 1969), the judge's instructions were adequate on this issue. The judge clearly instructed the jury that the defendant's operation of the motor vehicle must be the cause of the death of another. Clearly, if the victims' negligent conduct alone caused the accident, the jury could not logically find that the defendant negligently operated his automobile so as to cause the accident.

Contrary to the defendant's contention, the judge did not foreclose the jury's consideration of the victims' conduct in determining whether the defendant acted reasonably or used due care. Rather, he instructed the jury that, if the defendant operated negligently so that the lives of the public might be endangered, they were not to consider the victims' contributory negligence as excusing the defendant's conduct. This instruction correctly states the law. In criminal cases, as opposed to civil negligence suits, a victim's contributory negligence, even if it constitutes a substantial part of proximate cause (but not the sole cause), does not excuse a defendant whose conduct also causes the death of another. *Commonwealth* v. *Guillemette,* 243 Mass. 346, 347 (1923). *Commonwealth* v. *Peach,* 239 Mass. 575, 579 (1921). *Commonwealth* v. *Geisler,* 14 Mass. App. Ct. 268, 278-279 (1982). See 20 A.L.R.3d 473, 481 (1968).

7. *The prosecutor's closing argument.* On appeal the defendant contends that the prosecutor's summation was improper. Because the defendant made no objection to the closing statement at the trial, we review this issue only to determine if there is a substantial risk of a miscarriage of justice. *Commonwealth* v. *Bourgeois,* 391 Mass. 869, 884-885 (1984). *Commonwealth* v. *Freeman,* 352 Mass. 556, 564 (1967). "In analyzing whether an improper remark is prejudicial or presents a risk of a miscarriage of justice, the remark must be considered in the context of the prosecutor's entire argument, as well as in light of the judge's instruction to the jury and the evidence at trial." *Commonwealth* v. *Bourgeois, supra* at 885, and cases cited.[11] Viewed in this light, the prosecutor's summation did not create a substantial risk of a miscarriage of justice.

In conclusion, we find that there was sufficient evidence for the jury to convict the defendant under G. L. c. 90, § 24G (*a*), and that the judge committed no reversible error in not appointing the foreperson of the jury, admitting in evidence both versions of the District Court transcript, or instructing the jury on the law of negligence and causation. We also hold that the prosecutor's closing argument was not improper, and that G. L. c. 90, § 24G, is not ambiguous.

*Judgments affirmed.*

---

[11] The prosecutor repeatedly used the phrase "liar, liar" to characterize the defendant's position on the credibility of the Commonwealth's witnesses. This remark may have been somewhat extravagant, but on the whole the closing statement was grounded in the evidence. See *Commonwealth* v. *Bradshaw,* 385 Mass. 244, 277 (1982).