COMMONWEALTH vs. JEREMY H. MANDELL.

No. 89-P-1045.

Middlesex. September 11, 1990. - November 13, 1990.

Present: KASS, KAPLAN, & IRELAND, JJ.

*Homicide. Motor Vehicle*, Homicide. *Proximate Cause. Evidence*, Collateral matter, Relevancy and materiality. *Practice, Criminal*, New trial.

At the trial of a complaint of motor vehicle homicide by negligent operation, G. L. c. 90, § 24G (*b*), the prosecution sufficiently established a proximate relationship between the defendant's negligence in operating a motor vehicle and the death of the pedestrian who was struck by the vehicle. [506-507]

The judge at a criminal trial properly excluded evidence of habits of the victim tending to show he was "accident prone," proffered by the defendant to suggest that the victim's conduct at the time he was struck by the defendant's vehicle was a superseding cause of his death. [507-508]

The judge in a criminal case properly denied the defendant's motion for a new trial based on supposedly "new" evidence, where the evidence was not shown to have been unavailable for use at trial and was in any event remote from the issues before the jury. [508-509]

COMPLAINT received and sworn to in the Framingham Division of the District Court Department on October 28, 1987.

On appeal to the jury session of that division the case was tried before *Paul F. Healy, Jr.*, J., and a motion for a new trial was heard by him.

*Terry Philip Segal* (*Marshall D. Stein* with him) for the defendant.

*Michael Fabbri*, Assistant District Attorney (*Richard Gordon*, Special Assistant District Attorney, with him) for the Commonwealth.

KAPLAN, J. A jury of six found the defendant guilty of the crime of motor vehicle homicide by negligent operation,

G. L. c. 90, § 24G(b).[1] The defendant appeals from the conviction,[2] claiming that the judge erred in denying his motion for a required finding of not guilty, or (that contention failing) erred in excluding evidence of the victim's prior acts or habitual behavior as probative of his conduct during the fatal incident.

1. The jury could have sized up the event, reasonably, as follows.[3] The defendant (seventeen years of age) on August 4, 1987, a clear, dry, sunny day, was driving south in a Ford Tempo automobile at thirty-five miles per hour (the maximum permitted speed) on Concord Road, a north-south, two-lane road, twenty-six feet in width, which passes through Sudbury. About 2:30 P.M., he reached the crest of a slight hill some 309 feet short of the intersection of Concord Road with Candy Hill Road. At that distance, using reasonable care, he should have observed at the intersection a number of yellow pylons or cones across the thirteen-foot south lane and a man standing just behind the cones. (The pylons interdicted southbound traffic while a crosswalk was being painted and drying off; the man was a highway worker assigned to the job.) With ordinary care, the defendant should also have noticed a pedestrian warning sign about eighty-four feet down the road from the crest of the hill. The defendant's observation of conditions at the intersection should have improved as he approached it. The jury could find that the defendant drove down the road at unreduced speed,[4] knocked

---

[1] At the bench trial, the defendant had also been found "responsible" for the civil infraction of failing to yield to a pedestrian in a crosswalk, G. L. c. 89, § 11. The defendant sought de novo trial only on the vehicular homicide charge.

[2] The judge sentenced the defendant to two years in a house of correction, six months to be served and the rest suspended with probation, and 250 hours of community service.

[3] The familiar rule is that "[i]n reviewing the denial of a motion for a required finding of not guilty, we consider whether the evidence, viewed in the light most favorable to the Commonwealth, would warrant a reasonable juror in concluding that all the essential elements of the crime charged have been proved beyond a reasonable doubt." *Commonwealth* v. *Walsh*, 407 Mass. 740, 741 (1990).

[4] Moving at a speed of thirty-five miles an hour (fifty-one feet per second), the car, if braked, would have halted upon traversing sixty-one feet.

over a couple of the pylons and crashed into the man standing five feet from the right (west) side of the road facing the oncoming traffic, carried the man for a moment on the hood of the car, and cast him forward seventy-two feet, inflicting injuries upon him which killed him. The defendant did not attempt to swerve and go to the left (east) of the pylons, nor did he brake the car. He went onto a parking lot a short distance ahead, stopped there, then returned within a few minutes to the scene, where he told a police officer that he was the driver of the vehicle involved in the accident.

The defense at trial at first concentrated its efforts in an attempt to overcome the Commonwealth's proof of negligent operation. Later the defense resorted also to a proximate-cause point. On the present appeal it abandons altogether the issue of negligence and argues on the record that, although the defendant is taken to have been negligent, the Commonwealth did not establish a proximate relationship between the negligence and the death: the Commonwealth, so the defense argues, did not negate beyond a reasonable doubt the possibility that the victim, at the last moment before impact, "lunged" from the west side of the road into the path of the defendant's car, so that the defendant could not by any maneuver have averted the collision. Thus, says the defense, it may have been the victim who was the "sole cause" of the tragedy, relieving the defendant of criminal responsibility. Cf. *Commonwealth* v. *Campbell*, 394 Mass. 77, 82, 87 (1985); *Commonwealth* v. *Haley*, 23 Mass. 10, 14-15 (1986).[5] However, the jury could well find that the Common-

---

[5]In a prosecution for vehicular homicide by negligent operation, mere "contributory" negligence on the part of a victim does not relieve an accused, see *Commonwealth* v. *Berggren*, 398 Mass. 338, 340 & 341 n.4 (1986), but the victim's negligence may be such in the circumstances as to render it the sole cause of the fatality, and the accused, although negligent, goes free. For purposes of the present case, we indulge the assumption that if the victim "lunged" as the defense would have it, then that should be considered the sole cause; but we hold the jury could find that the Commonwealth disproved any such lunge. The assumption, however, is dubious. Professor Perkins agrees that "[e]ven though the defendant was criminally negligent in his conduct it is possible for negligence of the deceased . . . to intervene between this conduct and the fatal result in such a

wealth established the required nexus between negligence and injury.

2. The defendant complains that if, indeed, the jury were not impressed with the sole cause contention, this was, or could have been, because the judge declined to admit certain evidence related to the supposed "lunge." At voir dire,[6] the victim's employer testified that at times the victim seemed "impaired"; he had had minor accidents with vehicles and some accidents to himself, which had prompted the witness to take him off operating equipment; the victim was sometimes "accident prone." The witness apparently had himself seen one incident in which the victim scraped the sides of his vehicle by misjudging the distance between two parked cars.[7] The judge was right to exclude all this proposed testimony, offered to suggest that the victim's handicaps led him to make an aberrational lunge. The witness's testimony to one act of possible negligence that he himself had witnessed (the scraping incident) would not be barred by the hearsay rule but would fall under the general rule which disallows attempting to prove that a person committed a particular act by showing that he committed a similar act in the past (and query, too, whether similarity could be claimed here). See *Maillet* v. *ATF-Davidson Co.*, 407 Mass. 185, 188 (1990); Liacos, Massachusetts Evidence 420 (5th ed. 1981). The rest of the witness's proposed testimony was instinct with hearsay, as the judge observed, and was also of indefinite mean-

---

manner as to constitute a superseding cause, completely eliminating the defendant from the field of proximate causation." But he adds: "This is true only in situations in which the second act of negligence looms so large in comparison with the first, that the first is not to be regarded as a substantial factor in the final result." Perkins & Boyce, Criminal Law 787 (3d ed. 1982) (identical passage from second edition cited in *Commonwealth* v. *Campbell*, 394 Mass. at 87). On the particulars of the present case it may be considered that the defendant's negligence was a "substantial factor."

[6] The voir dire testimony may be regarded as in effect the defendant's offer of proof, but it has to be considered shorn of hearsay or anything else that would be inadmissible at trial under the rules of evidence.

[7] It is not made entirely clear whether the witness saw the incident or was reporting what he heard.

ing; these difficulties apart, if the testimony aimed at show-
ing the victim's supposed habitual behavior, it encountered
the general rule in this jurisdiction that habit is not admissi-
ble as a means of proving the commission of a particular act
— thus testimony about the victim's accident-proneness
should be excluded as a basis for proving that he lunged on
August 4, 1987. See *Figueiredo v. Hamill*, 385 Mass. 1003,
1004 (1982), and authorities cited; *Commonwealth v. Shine*,
25 Mass. App. Ct. 613, 614-615 (1988); Liacos, Massachu-
setts Evidence 423 (1981 & 1985 Supp.); McCormick, Evi-
dence § 195 (3d ed. 1984).[8] The judge went on to say that if
he had any discretion in admitting or excluding the testi-
mony, he would in discretion exclude it because it was "col-
lateral" and would invite diversionary evidence, and because
such probative value as it had was overwhelmed by its likely
prejudicial influence on the jury. We agree with the judge's
views. See *Commonwealth v. Geisler*, 14 Mass. App. Ct.
268, 279 (1982); *Commonwealth v. Shine*, 25 Mass. App.
Ct. at 614-615.

The judge denied a postverdict motion for a new trial
based on supposedly "new" deposition testimony in a related
civil action that the victim did not have vision in one eye.
The judge did not exceed the discretion allowed him on such
a motion. See *Commonwealth v. Little*, 384 Mass. 262, 268-
269 (1981). There was no demonstration that the evidence,
such as it was, could not have been obtained with reasonable
effort for use at trial. See *Commonwealth v. Markham*, 10
Mass. App. Ct. 651, 654 n.1 (1980). At all events, the evi-
dence was as remote from proving the "lunge" as the evi-
dence of accident-proneness, etc., discussed above. Contrast
*Commonwealth v. Galluzzo*, 25 Mass. App. Ct. 568, 571-572
(1988) (defendant, charged with driving so as to endanger,
denying his own negligence in collision, and claiming that the

---

[8]In the *Figueiredo* case, 385 Mass. at 1004-1005, the court reasserted
the Massachusetts decisional rule as to evidence of habit, comparing it
with the Federal and proposed Massachusetts rules on the subject (rule
406 in both sets). Any change, the court stated, should come about by
rulemaking.

accident was caused entirely by the negligence of the other operator in traveling toward him in the wrong lane, may introduce evidence that the operator was under the influence of intoxicating liquor at the time).[9]

*Judgment affirmed.*

*Order denying motion for new trial affirmed.*

---

[9]The defendant argues that the statute on vehicular homicide by negligent operation is unconstitutional. The argument was not made below and is anyway unsubstantial.